# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

CORE VCT PLC,
CORE VCT IV PLC, and
CORE VCT V PLC

                **Plaintiffs,**

    **v.**

JAMES HENSLEY,

                **Defendant.**

Civil Action No. 14-0074 (ESH)

## MEMORANDUM OPINION

Plaintiffs have filed objections to the January 26, 2015 Report and Recommendation of Magistrate Judge Alan Kay ("R&R") [ECF No. 26], which recommends that plaintiffs' suit be dismissed for lack of subject matter jurisdiction. (*See* Def. James Hensley's Mot. to Dismiss Pls.' Compl. Pursuant to Rule 12(b)(1) [ECF No. 4] ("Def.'s SMJ Mot.").)  For the reasons set forth below, the Court rejects plaintiffs' objections and will dismiss their suit for lack of subject matter jurisdiction.

## BACKGROUND

The facts and procedural history of this case are described in the Magistrate Judge's R&R.  (*See* R&R at 2-3.)  Plaintiffs, who are "public limited companies organized under the laws of the United Kingdom with their principal place of business located in London, England," obtained a default money judgment against defendant in the High Court of Justice, Queen's Bench Division, Commercial Court of London on December 3, 2012.  (Complaint [ECF No. 1] ("Compl.") ¶¶ 1, 5, 10.)  Plaintiffs seek to enforce this judgment against defendant pursuant to the Uniform Foreign-Country Money Judgments Recognition Act of 2011, D.C. Code § 15-361

*et seq.* (*Id.* ¶¶ 11-12.)  Plaintiffs assert that this Court has subject matter jurisdiction over the action "pursuant to 28 U.S.C. § 1332(a) because (1) there is complete diversity of citizenship between all Plaintiffs, which are citizens of the UK, and [defendant], who is a citizen of the US; and (2) the amount in controversy is greater than $75,000.00." (*Id.* ¶ 3.)  Defendant filed a motion to dismiss, claiming that "he was domiciled in Monaco at the time that this action was filed, and therefore cannot . . . be sued in a United States federal court on the basis of diversity jurisdiction." (R&R at 2-3 (citing Def.'s SMJ Mot. at 1).)

Plaintiffs requested jurisdictional discovery on the issue of defendant's domicile, which this Court granted. (*See* Mem. Op. and Order, Apr. 8, 2014 [ECF No. 8].)  The parties subsequently completed jurisdictional discovery and submitted their remaining briefs on defendant's motion to dismiss.  This Court denied that motion without prejudice and referred the case to a magistrate judge for an evidentiary hearing on the question of jurisdiction.  *See Core VCT PLC v. Hensley*, No. 14-cv-0074, 2014 U.S. Dist. LEXIS 99687 (D.D.C. July 23, 2014).  In particular, with respect to defendant's "sworn declaration of domiciliary intent" to live abroad, the Court could not assess the credibility of defendant's declaration without an evidentiary hearing.  *Id.* at *10.

Magistrate Judge Kay conducted an evidentiary hearing on October 9, 2014, at which only defendant testified. (*See* Evidentiary Hr'g on Subject Matter Jurisdiction, Oct. 9, 2014 [ECF No. 29] ("Hearing").)  At the hearing, defendant was confronted with documents that he had signed to obtain various tax benefits, on which he swore under penalty of perjury that he was an Illinois resident. (*Id.* at 24.)  Defendant testified that he had signed the papers without reading them and that he simply wanted the tax break. (*Id.*)  The Magistrate Judge found defendant's "explanations credible, albeit underhanded." (R&R at 9; *see also id.* at 10 ("The Court found

[defendant] to be a credible witness, and with respect to his misrepresentations on his tax and driver's license forms, the undersigned believes that [defendant] – as strange as it might sound – was telling the truth about lying to the Illinois government.").) With respect to plaintiffs' allegations that defendant maintained a domicile in Illinois, the Magistrate Judge found that there was "ample evidence that the Defendant leased his Chicago condominium [and] could not have used it as his residence." (*Id.* at 11; *see id.* at 10 ("[E]ven [plaintiffs] introduced evidence that [defendant] did not reside in his Chicago condominium, and [plaintiffs] failed to provide any additional evidence indicating that he might have a separate Illinois residence.") The Magistrate Judge further found that there was substantial evidence supporting defendant's claim that he was domiciled in France between 1989 and 1998. (*See id.* at 14-16.) Finally, on the issue of defendant's representation that he is currently domiciled in Monaco, the Magistrate Judge

> found [defendant] to be a credible witness, and believes that other objective indicia submitted in support of his Monaco domicile, including his Monegasque Residency Card, the parking space [defendant] rents in Monaco, evidence of previous long-term apartment leases, and other personal property that [defendant] has in Monaco, corroborate [defendant's] declaration and testimony at the evidentiary hearing.

(*Id.* at 17.)

Ultimately, the Magistrate Judge concluded that defendant "was not physically present with the intent to remain in Illinois, Monaco, or any other locale on January 17, 2014, the date this action was filed." (*Id.* at 24.) Nevertheless, since defendant had "clearly established a new domicile in France in 1989 and then Monaco in 1998," the "continuing domicile rule" dictated that "the only way that [defendant] could be a domiciliary of Illinois is if he . . . re-established Illinois as his domicile after having done so in France, Monaco, or both." (*Id.* at 28.) Since defendant had never reestablished his domicile in Illinois, the Magistrate Judge found that he "is a domiciliary of Monaco" and is therefore "stateless for the purposes of diversity jurisdiction."

3

(*Id.* at 29.)  The Magistrate Judge therefore recommended dismissing the action for want of subject matter jurisdiction.  (*Id.*)

Plaintiffs object to the Magistrate Judge's R&R.  (*See* Pls.' Objections to Magistrate Judge's Proposed Findings and Recommendations [ECF No. 27] ("Pls.' Objections").)  They argue that the Magistrate Judge's credibility determination was improper and that his analysis of defendant's domicile was legally erroneous.  (*See id.* at 2-3.)  Defendant argues that the Magistrate Judge's R&R should be adopted and the case dismissed.  (*See* Def.'s Resp. to Pls.' Opp. to the Report and Recommendation of U.S. Magistrate Judge Kay [ECF No. 28] ("Def.'s Resp.").)

## ANALYSIS

### I.      STANDARD OF REVIEW

The Court "must determine de novo any part of the Magistrate Judge's disposition that has been properly objected to" and may "accept, reject, or modify the recommended disposition."  Fed. R. Civ. P. 72(b)(3); *see also* L. Cv. R. 72.3(c).

### II.     THE MAGISTRATE JUDGE'S CREDIBILITY DETERMINATION

Plaintiffs contend that "[t]he Magistrate Judge's ultimate conclusion that [defendant] was credible is wholly inconsistent with his findings regarding [defendant's] character and the objective evidence presented."  (Pls.' Objections at 4.)  To support their argument, plaintiffs point to a declaration by defendant from February 2014 stating that he was "rent[ing] and liv[ing] in an apartment in Monaco," which plaintiffs assert was false.  (*Id.* (alterations in original) (quoting Decl. of James Hensley [ECF No. 4-2] ¶ 6).)  Plaintiffs also highlight a supplemental declaration by defendant, submitted on March 27, 2014, in which he stated that he intended to enter into a new long-term lease and renew his Monegasque Residency Card in June

2014, which he had not done by the time of the hearing on October 9, 2014.  (*See id.* at 4-5 (citing Am. and Supplemental Decl. of James Hensley [ECF No. 6-1] ("Amended Decl.") ¶ 14); Hearing at 16.)  Plaintiffs argue that defendant's failure to sign a new lease and renew his Residency Card belie his stated intention to reside in Monaco indefinitely.  (Pls.' Objections at 5.)  Finally, plaintiffs argue that the Magistrate Judge's evaluation of defendant's character – in particular, the comment that defendant's behavior was "underhanded" –  is inconsistent with the Magistrate Judge's credibility determination.  (*See id.* at 6.)

Although the Court is under a responsibility to make a "de novo determination of those portions of the . . . [Magistrate Judge's] recommendations to which objection is made," 28 U.S.C. § 636(b)(1), the Supreme Court has made clear that a "*de novo* determination" does not require "a *de novo* hearing" to review issues of credibility.  *United States v. Raddatz*, 447 U.S. 667, 674 (1980).  The *Raddatz* Court explained that "Congress intended to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a magistrate's proposed findings and recommendations."  *Id.* at 676.

Plaintiffs have not provided any persuasive reasons for reversing the Magistrate Judge's credibility determinations.  The first statement that plaintiffs object to – defendant's original declaration that he "rent[s] and live[s] in an apartment in Monaco" – is, at worst, imprecise. Plaintiffs do not contest that defendant *does* rent an apartment in Monaco when he is there.  (*See* Hearing at 58-59.)  And, the question of whether he lives in Monaco is at the very heart of this dispute.  Moreover, defendant retracted this declaration and subsequently issued a more detailed description of his living situation.  (*See* Amended Decl. ¶¶ 1, 13 )  For these reasons, his original declaration is not so inconsistent with his testimony as to impugn his credibility.

Every other objection plaintiffs now raise about defendant's credibility was analyzed at length by the Magistrate Judge, who eventually "found [defendant's] testimony credible and believed that it, along with other objective evidence, sufficiently corroborated his Amended and Supplemental Declaration."  (R&R at 26.)  First, the Magistrate Judge noted that defendant had not followed through on his stated intention to enter into another long-term lease.  (*See id.* at 23.)  The Magistrate Judge explained that defendant testified at the hearing that "he elected not to sign a new long-term lease in Monaco because he infrequently remains in one place for more than a few days due to the nature of his work."  (*Id.*)  Plaintiffs have presented no evidence to contradict defendant's explanation for his change of heart.  Plaintiffs' next contention – that defendant's failure to sign a new lease or to renew his Monegasque Residency Card casts doubt on his stated intention to remain permanently in Monaco – is similarly meritless. As the Magistrate Judge explained, defendant lives "a transient lifestyle, and clearly has for several decades."  (*Id.* at 25.)  Indeed, "[defendant] currently has no permanent address and no long-term lease anywhere in the world."  (*Id.* at 18.)  Nevertheless, defendant does keep "an automobile, personal property, and a parking spot in Monaco."  (*Id.* at 23.)  Also, from 1999 until 2013, defendant maintained a valid Monegasque Residency Card and a long-term apartment lease in that country.  (*See id.* at 25; Amended Decl. ¶ 14.)  Finally, plaintiffs failed to show that defendant intended to reestablish his domicile elsewhere after his Monaco lease expired in 2013.   (*See* R&R at 13-14 (explaining that defendant's renewal of his Illinois driver's license "does nothing to bolster the theory that [defendant] re-established his Illinois domicile during the brief time period when his Residency Card possibly became invalid and when this action commenced").)  Defendant's failure to sign a

new lease or to renew his Residency Card, therefore, does not undermine the credibility of his

stated intention to live in Monaco.[1]

Finally, the Court disagrees with plaintiffs that the Magistrate Judge's unfavorable

evaluation of defendant's behavior should preclude a finding that defendant was a credible

witness. Indeed, the Court agrees with the Magistrate Judge's assessment that defendant was

quite candid about his schemes to avoid paying taxes and his possible commission of perjury.

(*See id.* at 9-10 ("[Defendant] admitted that he did not read the fine print on the Senior Citizen

tax exemption papers, and seemed unperturbed at the evidentiary hearing when he was

confronted with the possibility that he may well be guilty of perjury.").)[2]

## III.   THE MAGISTRATE JUDGE'S DETERMINATION THAT DEFENDANT WAS NOT DOMICILED IN ANY U.S. STATE

Plaintiffs also object to the Magistrate Judge's legal conclusion that defendant was

domiciled in either France or Monaco at the initiation of the lawsuit.  In particular, they argue

that the Magistrate Judge erred in "fail[ing] to consider that [defendant] had established at least a

constructive residence in Illinois, which was legally sufficient to effect a change in domicile."

(Pls.' Objections at 7.)  They also criticize the Magistrate Judge's "application of the continuing

---

[1] Moreover, as the Magistrate Judge observed, defendant's present intention with respect to his living situation in Monaco is not dispositive of his domicile for purposes of subject matter jurisdiction.  (*See* R&R at 27.)  As will be discussed *infra*, the presumption of continuing domicile places defendant's domicile in Monaco even if he has no present intention of staying there indefinitely, since "he at no point re-established himself as a domiciliary of [Illinois] after he left in 1989."  (*Id.* at 28.)

[2] Plaintiffs contend that the Magistrate Judge's holding "lets [defendant] out of this action on a freak technicality, allowing him to game the system yet again."  (Pls.' Objections at 2 (internal quotation marks and footnote omitted).)  However, the Court's holding today is simply that *federal courts* do not have jurisdiction over the action; defendant could well be subject to suit in Superior Court.

domicile rule to render stateless a U.S. citizen who has no permanent or legal right to reside abroad." (*Id.* at 9.)

The Magistrate Judge found that defendant had moved his domicile from Illinois to France in 1989. (R&R at 24-25.) Plaintiffs do not contest this finding. The Magistrate Judge also found that defendant moved his domicile from France to Monaco in 1998. (*See id.* at 25.) Again, plaintiffs do not appear to challenge this point. Finally, the Magistrate Judge found that defendant had never *reestablished* a domicile in the United States after leaving in 1989. (*See id.* at 24-26; *see also id.* at 8-14 (discussing lack of evidence of reestablishment).) Applying the presumption of continuing domicile, the Magistrate Judge held that "wherever [defendant] last[] established himself as a domiciliary will serve as his domicile." (*Id.* at 24.) Since defendant had most recently been domiciled in Monaco, the Magistrate Judge concluded that "he is a domiciliary of Monaco." (*Id.* at 25.) In the alternative, the Magistrate Judge held that even "[i]f [defendant] . . . failed to establish himself as a domiciliary of Monaco . . . the presumption of continuing domicile would dictate that France was his most recent place of domicile." (*Id.* at 29.)

Plaintiffs first object to the Magistrate Judge's reasoning by arguing that defendant's contacts with Illinois in 2012 and 2013 "re-establish[ed] a constructive residency" in that state. (Pls.' Objections at 8.) In the D.C. Circuit, "[d]omicile is determined by two factors: physical presence in a state, and intent to remain there for an unspecified or indefinite period of time." *Prakash v. Am. Univ.*, 727 F.2d 1174, 1180 (D.C. Cir. 1984); *see also Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989) ("[D]omicile is established by physical presence in a place in connection with a certain state of mind concerning one's intent to remain there."). The Magistrate Judge correctly held that defendant did not meet these requirements. Plaintiffs argue

that defendant "was present in Illinois in May 2012, when he applied for a property tax discount; in September 2012, when he renewed his Illinois driver's license; in March 2013, when he filed his 2012 federal and state income tax returns as an Illinois resident; and in December 2013 when he was employed by Global DMC Partners, LLC, a U.S. entity."  (Pls.' Objections at 8 (footnote omitted).)  These contacts are insufficient to prove that defendant was physically present and intended to permanently live in Illinois.  As the Magistrate Judge observed, when defendant renewed his Illinois driver's license in September 2012, he still had a long-term lease in Monaco and a valid Residency Card for that country.  (*See* R&R at 14 ("Since the renewal of his driver's license predates the possible expiration of his Residency Card, this evidence does nothing to bolster the theory that [defendant] re-established his Illinois domicile during the brief time period when his Residency Card possibly became invalid and when this action was commenced.").)  His declaration of Illinois citizenship on his taxes is similarly weak evidence of domiciliary intent. *See Galva Foundry Co. v. Heiden*, 924 F.2d 729, 730-31 (7th Cir. 1991) (finding defendant domiciled in Illinois where, for tax purposes, he had obtained a Florida driver's license, registered to vote in Florida, and listed Florida as his permanent address on his taxes, but where "the center of gravity" of his life remained in Illinois).  Moreover, it is uncontested that defendant has nowhere to live in Illinois; he has leased out his Chicago condominium since he moved to France in 1989, and the Court agrees that "[t]he lack of an Illinois residence weighs heavily against domicile."[3]  (R&R at 10.)  Based on the evidence presented, the Court also

---

[3] Plaintiffs cite *Jones v. McMasters*, 61 U.S. 8 (1858), for the proposition that "there may be domicil without actual residence."  *Id.* at 15.  This quote, however, appears to be an argument made by counsel in that case.  The Court itself "d[id] not enter upon the question of the domicil." *Id.* at 20.  The better view was the one expressed sixteen years later in *Mitchell v. United States*, 88 U.S. 350 (1874), where the Court explained that "[t]o constitute the new domicile two things are indispensable: First, residence in the new locality; and, second, the intention to remain there." *Id.* at 353; *accord Texas v. Florida*, 306 U.S. 398, 424 (1939) ("Residence in fact, coupled with

concludes that plaintiffs have failed to demonstrate that defendant reestablished a domicile in Illinois after 1989.

Plaintiffs next object that, "[e]ven if . . . [defendant] did not re-establish a domicile in Illinois prior to January 2014, [the Magistrate Judge's] conclusion that [defendant] was domiciled in Monaco or France is nevertheless contrary to law." (Pls.' Objections at 9.) Their first argument on this front is that the Magistrate Judge implicitly adopted the "homeless wanderer" theory in *Pannill v. Roanoke Times Co.*, 252 F. 910 (W.D. Va. 1918), which plaintiffs argue has been "roundly rejected." (Pls.' Objections at 10.) Plaintiffs, however, have mischaracterized the Magistrate Judge's holding. The so-called "homeless wanderer" theory adopted in *Pannill* would "deny diversity jurisdiction to [any] person with a transient life-style" because the individual lacked an intention to permanently reside anywhere. *See Willis v. Westin Hotel Co.*, 651 F. Supp. 598, 602 (S.D.N.Y. 1986). In contrast, Magistrate Judge Kay found that defendant was "stateless for diversity jurisdiction purposes" only because, by operation of the presumption of continuing domicile, he was legally domiciled in Monaco or France. (R&R at 25.) This opinion did not rely on the homeless wanderer theory.[4]

---

the purpose to make the place of residence one's home, are the essential elements of domicile."). Although there may be fact patterns that satisfy the two-part *Prakash* domicile test without a residence, plaintiffs have failed to show that this is such a case.

[4] Indeed, the widespread acceptance of the presumption of continuing domicile is the reason the homeless wanderer theory has been rejected. If the *Pannill* court had applied the presumption of continuing domicile, the plaintiff would not have been stateless but rather would have been domiciled in California, where he last resided with the intent to stay before beginning his wandering, and the court would have had diversity jurisdiction over the action. *See* 252 F. at 912; *see also Willis*, 651 F. Supp. at 602-03 (rejecting the *Pannill* holding in favor of the presumption of continuing domicile).

Plaintiffs' second argument is that "a U.S. citizen cannot be found stateless unless he is a citizen . . . of a foreign country when the U.S. action was filed."[5]  (Pls.' Objections at 12.) Plaintiffs contend that:

> [since] the undisputed evidence established that [defendant] had neither an actual residence nor a legal right to reside in Monaco (or France) at the time this action was filed, . . . the Court should ascertain [defendant's] state citizenship to further the purpose of diversity jurisdiction, and deem him to be a citizen of Illinois, the last United States jurisdiction in which he was legally capable of being domiciled.

(*Id.* at 14.)  Even assuming that defendant abandoned his Monegasque domicile in 2013 when his long-term lease in that country expired, plaintiffs have failed to offer any coherent explanation for why his domicile should revert to Illinois rather than remain in Monaco.  The presumption of continuing domicile dictates that "[a] domicile once existing continues until another is acquired." *Desmare v. United States*, 93 U.S. 605, 610 (1876); *see also Mitchell*, 88 U.S. at 353 ("A domicile once acquired is presumed to continue until it is shown to have been changed."); *Padilla-Mangual v. Pavia Hosp.*, 516 F.3d 29, 31 (1st Cir. 2008) ("There is, ordinarily, a presumption of continuing domicile."); *Von Dunser v. Aronoff*, 915 F.2d 1071, 1072 (6th Cir. 1990) ("A person's previous domicile is not lost until a new one is acquired."); *Janzen v. Goos*, 302 F.2d 421, 425 (8th Cir. 1962) ("Once acquired, [domicile] is presumed to continue until it is

---

[5] Some of the confusion in the present case appears to arise from the use of the word "citizens" in the diversity jurisdiction statute.  28 U.S.C. § 1332(a)(2) (granting federal courts jurisdiction over civil actions "where the matter in controversy exceeds the sum or value of $ 75,000, exclusive of interests and costs, and is between . . . (2) citizens of a State and citizens or subjects of a foreign state").  Plaintiffs seem to be interpreting this language to mean that, if defendant is not a "citizen" of Monaco, as defined by the Monegasque government, then he must be a citizen of Illinois.  This interpretation is mistaken.  "To qualify as a 'citizen of a State' for the purposes of § 1332(a), a natural person must be both a citizen of the United States and be domiciled within a particular state." *Saadeh v. Farouki*, 107 F.3d 52, 56 (D.C. Cir. 1997).  The critical inquiry, then, is whether defendant was domiciled in Illinois when this suit commenced.  *See Freeport-McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428 (1991) ("[D]iversity of citizenship is assessed at the time the action is filed.").

shown to have been changed."); *Agee v. Bush*, No. 95-cv-1909, 1996 U.S. Dist. LEXIS 22934, at
*8 (D.D.C. Aug. 26, 1996) ("[C]ourts presume that a person's domicile, once established,
continues until a new one is conclusively established."); 15 *Moore's Federal Practice* § 102.34
(Matthew Bender 3d ed.) ("There is a presumption of continuing domicile . . . that applies every
time a person relocates. Once a domicile is established in one state, it is presumed to continue in
existence, even if the party leaves that state, until the adoption of a new domicile is
established.").

The Court has not found any authority (nor have plaintiffs cited any) to support plaintiffs'
position that the presumption of continuing domicile should not apply internationally.  On the
contrary, several courts have found that an individual's domicile abroad persists until he
establishes a new domicile elsewhere.  In *Sadat v. Mertes*, for example, plaintiff moved from
Pennsylvania to Lebanon and then to Egypt, where he was residing when he filed suit.  *See* 615
F.2d 1176, 1178-79 (7th Cir. 1980).  The Seventh Circuit affirmed the district court's holding
that plaintiff was domiciled in Egypt.  *Id.* at 1181.  However, even if "the district court's
conclusion that the plaintiff intended to make Egypt his home was erroneous," the plaintiff's
domicile would have been in Lebanon, not Pennsylvania, because "[a] domicil once established
continues until it is superseded by a new domicil."  *Id.* (quoting Restatement (Second) of
Conflict of Laws § 19 (1971)); *see also Techno-TM, LLC v. Fireaway, Inc.*, 928 F. Supp. 2d 694,
697-98 (S.D.N.Y. 2013) (applying the presumption of continuing domicile to find a couple
domiciled in Costa Rica, notwithstanding the fact that they had relocated to Washington, where
they had told a judge, after the initiation of the suit, that they had "not established a state of

permanent residence in the United States").[6]  In light of these cases and the general rule that an individual's domicile persists until a new domicile is established, this Court concludes that the Magistrate Judge was correct to hold that defendant was legally domiciled in Monaco at the initiation of the lawsuit.

## CONCLUSION

For the reasons stated above, the Court adopts Magistrate Judge Kay's Report and Recommendation [ECF No. 26] in full.  Plaintiffs' objections [ECF No. 27] are overruled and the case is dismissed for lack of subject matter jurisdiction.  An Order consistent with this Memorandum Opinion will be issued on this day.

/s/   *Ellen Segal Huvelle*
ELLEN SEGAL HUVELLE
United States District Judge

Date:   March 31, 2015

---

[6] Plaintiffs argue at length that *Techno-TM* is inapplicable because "at no point in the [*Techno-TM*] case was there a substantive examination of the [defendants'] actual residence or domiciliary intent."  (Pls.' Objections at 16.)  This argument misses the significance of the case, however, which is simply that the district court judge applied the presumption of continuing domicile to a party domiciled abroad.

13